# EXHIBIT 1

# State Farm Mut. Auto. Ins. Co. v. Parisien

United States District Court for the Eastern District of New York

November 26, 2018, Decided; November 26, 2018, Filed

18-CV-289

**Reporter**

352 F. Supp. 3d 215 *; 2018 U.S. Dist. LEXIS 199566 **; 2018 WL 6173435

State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, Plaintiffs, - against - Jules Parisien, M.D., Luqman Dabiri, M.D., Ksenia Pavlova, D.O., Noel Blackman, M.D., Frances Lacina, D.O., Allay Medical Services, P.C., FJL Medical Services P.C., JFL Medical Care P.C., JPF Medical Services, P.C., KP Medical Care P.C., PFJ Medical Care P.C., RA Medical Services P.C., Darren Mollo, D.C., Darren Mollo D.C., P.C., ACH Chiropractic, P.C., Energy Chiropractic, P.C., Island Life Chiropractic Pain Care, PLLC, Charles Deng, L.A.c., Charles Deng Acupuncture, P.C., David Mariano, P.T., MSB Physical Therapy P.C., Maiga Products Corporation, Madison Products of USA, Inc., Quality Custom Medical Supply, Inc., Quality Health Supply Corp., Personal Home Care Products Corp., and AB Quality Health Supply Corp., Defendants.

**Subsequent History:** Related proceeding at Queen v. State Farm Mut. Ins. Co., 2019 U.S. Dist. LEXIS 132391 (S.D. Fla., Aug. 7, 2019)

Magistrate's recommendation at State Farm Mut. Auto. Ins. Co. v. Parisien, 2019 U.S. Dist. LEXIS 220309 (E.D.N.Y., Dec. 2, 2019)

Related proceeding at, Magistrate's recommendation at State Farm Mut. Auto. Ins. Co. v. Maistrenko, 2019 U.S. Dist. LEXIS 221150 (S.D. Fla., Dec. 20, 2019)

**Counsel:** [**1] For Maria Masiglia, Movant: Donald J. Kravet, LEAD ATTORNEY, Kravet & Vogel, P.C., New York, NY; Maria Elizabeth Rodi, LEAD ATTORNEY, Kaplan Kravet & Vogel LLP, New York, NY.

For State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, Plaintiffs: Anne Raven, Patrick C. Harrigan, Jonathan L. Marks, PRO HAC VICE, Katten Muchin Rosenman LLP, Chicago, IL; Christopher Thomas Cook, Michael Max Rosensaft, Katten Muchin Rosenman LLP, New York, NY; Silke G. Watson, PRO HAC VICE, Katten Muchin Rosenman, Chicago, IL.

For Oleg Rybak, Plaintiff: Steven Lloyd Brounstein, Steve L. Brounstein, PLLC, Brooklyn, NY.

For Jules Parisien, M.D., Luqman Dabiri, M.D., Ksenia Pavlova, D.O., Frances Lacina, D.O., Allay Medical Services, P.C., FJL Medical Services P.C., JFL Medical Care P.C., JPF Medical Services, P.C., KP Medical Care P.C., Darren Mollo, D.C., Darren Mollo D.C., P.C., ACH Chiropractic, P.C., Energy Chiropractic, P.C., Island Life Chiropractic Pain Care, PLLC, Charles Deng, L.A.c., Charles Deng Acupuncture, P.C., David Mariano, P.T., MSB Physical Therapy P.C., Defendants: Mark L. Furman, LEAD ATTORNEY, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, [**2] LLP, Brooklyn, NY.

For Noel Blackman, M.D., Defendant: Nigel Edwin Blackman, LEAD ATTORNEY, Blackman & Melville, PC, New York, NY.

For PFJ Medical Care P.C., RA Medical Services P.C., Defendants: Mark L. Furman, LEAD ATTORNEY, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, Brooklyn, NY; Andrew S. Fisher, Fisher & Fisher, Staten Island, NY.

For Maiga Products Corporation, Madison Products of USA, Inc., Quality Health Supply Corp., Personal Home Care Products Corp., AB Quality Health Supply Corp., Defendants: Andrew S. Fisher, Fisher & Fisher, Staten Island, NY; Mark L. Furman, Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, Brooklyn, NY.

For Quality Custom Medical Supply, Inc., Defendant: Nicholas Paul Bowers, Gary Tsirelman, P.C., Brooklyn, NY.

For Tatiana Rybak, Interested Party: Adam Michael Felsenstein, LEAD ATTORNEY, Gallet Dreyer & Berkey, LLP, New York, NY; Roger L. Stavis, LEAD ATTORNEY, Gallet, Dreyer & Berkey LLP, New York, NY.

**Judges:** I. Leo Glasser, United States District Judge.

**Opinion by:** I. Leo Glasser

Case 1:21-cv-01986-PKC-RLM Document 28-1 Filed 06/21/21 Page 3 of 17 PageID #: 570

352 F. Supp. 3d 215, *215; 2018 U.S. Dist. LEXIS 199566, **2

# Opinion

 **[*219]** MEMORANDUM AND ORDER

GLASSER, Senior United States District Judge:

Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty **[**3]** Company (together, "Plaintiffs" or "State Farm") bring this action seeking damages for benefits paid under no-fault automobile insurance policies for services rendered or purportedly rendered by Defendants. (ECF No. 5 ("Am. Compl.")). State Farm also seeks a **[*220]** declaratory judgment that Defendants are not entitled to collect any future no-fault benefits for services rendered to date and through the pendency of the litigation. (Am. Compl. ¶¶ 261-269). Defendants are various individual providers and affiliated corporations who purportedly rendered services or provided medical supplies to State Farm's insureds at 1786 Flatbush Avenue in Brooklyn, New York ("1786 Flatbush"). (Am. Compl. ¶¶ 12-43).[1] This action is one of many that have been commenced, and will surely continue to be commenced, by insurance carriers in this district against medical providers who have allegedly abused New York's no-fault statute, N.Y. Ins. L. §§ 5101, *et seq.*, to carry out fraud or collect benefits to which they are not entitled under applicable regulations. *See Allstate Insurance Company v. Tvildiani*, 2015 WL 13048729, at *1 (E.D.N.Y. Apr. 14, 2015) (observing that "[a]llegations of fraud on our health care system generally ... have become too common. There have been dozens of cases brought in this district alleging the same **[**4]** misuse of New York's No Fault Insurance law").

Presently before the Court is State Farm's motion for a preliminary injunction of proceedings that have been commenced, and which may be commenced in the future, by Defendants to collect no-fault benefits from State Farm. (ECF No. 6). *See* Fed. R. Civ. P. 65. The temporary relief that State Farm requests may be divided into three branches:

> 1. an order staying lawsuits brought by Defendants against Plaintiffs to collect no-fault benefits and which are currently pending in New York state court;
> 2. an order staying pending American Arbitration Association ("AAA") proceedings brought by Defendants against Plaintiffs to collect no-fault benefits; and
> 3. an order enjoining Defendants from commencing any future lawsuits or arbitration proceedings in order to collect no-fault benefits.

(ECF No. 6).

It is the first branch that raises the most significant legal and policy questions, not only for New York's no-fault scheme, but for our ever-evolving jurisprudence on the scope of the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283. "It is always embarrassing for a lower court to say whether the time has come to disregard decisions of a higher court, not yet explicitly overruled, because they **[**5]** parallel others in which the higher court has expressed a contrary view." *Spector Motor Service v. Walsh*, 139 F.2d 809, 823 (1943) (Hand, J., dissenting). Although there are precedents suggesting that a court's authority to enjoin state proceedings in aid of its jurisdiction does not apply to actions *in personam*, *see Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 139, 62 S. Ct. 139, 86 L. Ed. 100 (1941); *Kline v. Burke Constr. Co.*, 260 U.S. 226, 43 S. Ct. 79, 67 L. Ed. 226 (1922), "one should not wait for formal retraction in the face of changes plainly foreshadowed." **[*221]** *Spector Motor Service*, 139 F.2d at 823; *see also Cohens v. State of Virginia*, 19 U.S. 264, 404, 5 L. Ed. 257 (1821) ("Questions may occur which we would gladly avoid, but we cannot avoid them"; "[w]ith whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us") (Marshall, C.J.). Based on its review of the relevant case law and statutory authority, and under the specific facts presented in this case, the Court grants State Farm's motion in its entirety.

## BACKGROUND

### I. New York's No-Fault Statute

---

[1] Defendants are Jules Parisien, M.D.; Luqman Dabiri, M.D.; Ksenia Pavlova, D.O.; Noel Blackman, M.D.; Frances Lacina, D.O.; Allay Medical Services, P.C.; FJL Medical Services P.C.; JFL Medical Care P.C.; JPF Medical Services, P.C.; KP Medical Care P.C.; PFJ Medical Care P.C.; RA Medical Services P.C.; Darren Mollo, D.C.; Darren Mollo D.C., P.C.; ACH Chiropractic, P.C.; Energy Chiropractic, P.C.; Island Life Chiropractic Pain Care, PLLC; Charles Deng, L.A.c.; Charles Deng Acupuncture, P.C.; David Mariano, P.T.; MSB Physical Therapy P.C.; Maiga Products Corporation; Madison Products of USA, Inc.; Quality Custom Medical Supply, Inc.; Quality Health Supply Corp.; Personal Home Care Products Corp.; and AB Quality Health Supply Corp. (Am. Compl. ¶¶ 12-43).

Case 1:21-cv-01986-PKC-RLM   Document 28-1   Filed 06/21/21   Page 4 of 17 PageID #: 571

352 F. Supp. 3d 215, *221; 2018 U.S. Dist. LEXIS 199566, **5

The Comprehensive Motor Vehicle Insurance Reparations Act, *see* N.Y. Ins. L. §§ 5101 *et seq.* (formerly N.Y. Ins. Law §§ 670 *et seq.*) sets forth New York's no-fault scheme and "supplant[s] the state's common law tort remedies for most injuries associated with automobile accidents with a no-fault insurance scheme." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir. 2004). Under the statute, automobile insurers must provide coverage for "basic economic loss," including medical expenses, arising out of the **[**6]** use or operation of a covered motor vehicle, without regard to fault. *See* N.Y. Ins. L. §§ 5102, 5103; *Mallela*, 372 F.3d at 502. The insured's claim may be assigned to his or her provider, who bills the insurer directly. *See* 11 N.Y.C.R.R. § 65-3.11. The purpose of the no-fault system is threefold: "to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists." *Medical Society of State v. Serio*, 100 N.Y.2d 854, 860, 800 N.E.2d 728, 768 N.Y.S.2d 423 (N.Y. 2003); *see Montgomery v. Daniels*, 38 N.Y.2d 41, 50-51, 340 N.E.2d 444, 378 N.Y.S.2d 1 (N.Y. 1975) (discussing reasons for the no-fault statute's enactment).

Section 5106 create a "[f]air claims settlement" procedure for all no-fault claims. No-fault benefits are deemed overdue if they are not paid or denied within 30 calendar days after proof of claim is submitted. *See* N.Y. Ins. L. § 5106(a); 11 N.Y.C.R.R. § 65-3.8(c). If an insurer fails to comply with this timeframe, it will be precluded from asserting many (but not all) defenses to coverage, including most fraud-based defenses. *See Fair Price Medical Supply Corp. v. Travelers Indem. Co.*, 10 N.Y.3d 556, 890 N.E.2d 233, 860 N.Y.S.2d 471 (2008); *Central Gen. Hosp. v. Chubb Group of Ins. Companies*, 90 N.Y.2d 195, 199, 681 N.E.2d 413, 659 N.Y.S.2d 246 (1997). A claimant may bring an action in state court to recover overdue no-fault benefits, and in any such action the claimant need only show that the prescribed statutory billing forms were mailed and received and that the benefits are overdue. *See Viviane Etienne Medical Care, P.C. v. Country-Wide Ins. Co.*, 25 N.Y.3d 498, 506, 14 N.Y.S.3d 283, 35 N.E.3d 451 (N.Y. 2015). In addition, insurers are required to include a clause in their policies **[**7]** allowing the claimant to seek arbitration of their claims for no-fault benefits. *See* N.Y. Ins. L. § 5106(b); 11 N.Y.C.R.R. § 65-1.1(a), (d).

An insurer who pays no-fault benefits and subsequently discovers fraud may bring an action for damages. *See State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F.Supp.2d 221, 229-235 (E.D.N.Y. 2008); *State Farm Mut. Automobile Ins. Co. v. CPT Medical Services, P.C.*, 2008 U.S. Dist. LEXIS 71156, 2008 WL 4146190, at *6-*7 (E.D.N.Y. Sept. 5, 2008). The insurer may also bring an action for a declaratory judgment that it is not liable for any unpaid claims where the provider has committed **[*222]** fraud or breached applicable no-fault regulations. *See* 28 U.S.C. § 2201; *Government Employees Ins. Co. v. Jacques*, 2017 U.S. Dist. LEXIS 20915, 2017 WL 9487191, at *9-*11 (E.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 50825, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 U.S. Dist. LEXIS 125653, 2009 WL 10449036, at *4 (E.D.N.Y. Dec. 30, 2009), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 21376, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010). However, if an insurer is precluded from asserting a defense to coverage (such as provider fraud) due to its noncompliance with the 30-day rule, it will also be precluded from obtaining a declaratory judgment on those same grounds. *See Allstate Ins. Co. v. Williams*, 2015 U.S. Dist. LEXIS 126020, 2015 WL 5560543, at *7 (E.D.N.Y. Aug. 28, 2015); *Government Employees Ins. Co. v. AMD Chiropractic, P.C.*, 2013 U.S. Dist. LEXIS 130671, 2013 WL 5131057, at *8 (E.D.N.Y. Sept. 12, 2013).

## II. Factual Background

Since August 2013, and "continu[ing] uninterrupted since that time," Defendants have allegedly subjected State Farm's insureds to a suite of medically unnecessary interventions, referred to in the complaint as the "Predetermined Treatment Protocol," to defraud State Farm and exploit those insureds' no-fault benefits. (Am. Compl. ¶¶ 2-3, 6). According to the complaint:

"[T]he Predetermined Treatment Protocol involves:

"(a) initial examinations that are not legitimately **[**8]** performed to determine the true nature and extent of patient injuries, but rather are performed, if at all, as a pretext to report substantially similar and in some instances nearly identical examination findings to justify a variety of unnecessary treatment services;

"(b) a treatment plan consisting of a combination of purported physical therapy modalities, chiropractic manipulations, and acupuncture, provided to almost every patient on almost every visit and often on the same dates of service, regardless of the unique

Case 1:21-cv-01986-PKC-RLM   Document 28-1   Filed 06/21/21   Page 5 of 17 PageID #: 572

352 F. Supp. 3d 215, *222; 2018 U.S. Dist. LEXIS 199566, **8

circumstances and needs of each patient;

"(c) employing particular treatments, modalities, and services not because they are clinically beneficial to the patients, but to maximize charges and avoid limitations on the amounts that can be charged under the applicable fee schedule;

"(d) subjecting patients to medically unnecessary diagnostic tests, which include digital range of motion tests ('ROM Tests'), computerized muscle strength tests ('Muscle Tests'), Nerve Conduction Velocity Tests ('NCVs'), Electromyography Tests ('EMGs'), somatosensory evoked potential tests ('SSEPs'), brainstem auditory evoked potential tests ('BEPs'), Functional Capacity Evaluations, and pain [**9] fiber nerve conduction studies ('V-sNCT') (collectively, the 'Tests');

"(e) recommending and performing medically unnecessary trigger point injections and dry needling procedures;

"(f) recommending and providing virtually identical bundles of medically unnecessary durable medical equipment ('DME') and orthotic devices (collectively 'Supplies'); and

"(g) submitting documents to State Farm falsely representing that the examinations, treatment, Tests, injections, and Supplies purportedly rendered were medically necessary when, in fact, they either were not performed or were performed to exploit patients' No-Fault benefits and not because they were medically necessary."

(Am. Compl. ¶ 3).

According to the complaint, once patients arrive at 1786 Flatbush, the physician [*223] Defendants would initially examine them as a pretext to justify unnecessary services, consisting of a combination of physical therapy, chiropractic and acupuncture designed to maximize charges. (Am. Compl. ¶¶ 78-88). The complaint alleges that the treatment that patients receive is medically unnecessary, inadequately or illegibly documented, non-reimbursable, similar or identical across numerous patients without regard for the [**10] patients' individual clinical conditions, or simply not rendered at all. (Am. Compl. ¶¶ 89-205). In some cases, the documentation provided to State Farm allegedly "contain[ed] no indication of any communication between or among any of the professionals rendering services that would suggest any attempt to coordinate their treatment." (Am. Compl. ¶ 111). It is alleged that the treatments are selected in a formulaic fashion to maximize reimbursements under the applicable fee schedule. (Am. Compl. ¶¶ 76, 127,  158, 204-205). On occasion, Defendants will misrepresent the treatment provided by billing under improper billing codes, which are specifically selected to inflate reimbursements. (Am. Compl. ¶¶ 77, 94-95, 127, 139, 172, 182). State Farm also alleges that Defendants failed to appear for examinations-under-oath ("EUO") on request, thereby evading State Farm's efforts to verify the claims. (Am. Compl. ¶¶ 233, 238; ECF No. 7-4 ("McKenna Aff.") ¶ 10).

Critically, Defendants' alleged fraud may not be apparent from any one individual claim or its supporting documentation. Rather, State Farm points to larger patterns in Defendants' conduct as evidence of fraud. These allegations include the [**11] following:

• The physical therapy and chiropractic treatments that patients purportedly receive at 1786 Flatbush are "almost identical" and do "not change regardless of whether the patients purportedly improve or get worse." (Am. Compl. ¶¶ 89, 106).

• The examination reports for acupuncture services reveal "patterns which are not credible across a large sample of individuals," including similar or identical symptoms. (Am. Compl. ¶ 123).

• Defendants "routinely provided particular physical therapy modalities" in combinations that would allow them to bill for the maximum allowable number of 'relative units' per day. (Am. Compl. ¶ 76).

• "Almost none of the patients at 1786 Flatbush are discharged from care based on their purported clinical conditions. To the extent the medical records of patients at 1786 Flatbush contain references to discharges, they routinely show (a) the patient made the decision to stop treating; (b) the patient claimed to undergo treatment after the date of the purported discharge; or (c) the discharge came shortly after [State Farm] requested one of the defendant providers appear for an EUO . . . ." (Am. Compl. ¶ 75).

• Defendants submitted multiple bills for services [**12] rendered by the same providers on the same date of service. (Am. Compl. ¶ 237).

• Defendants created various controlled entities with separate tax identification numbers to conceal that they are submitting claims from the same individuals for the same fraudulent services. (Am. Compl. ¶¶ 60-61).

As of the date State Farm filed this motion, Defendants had submitted bills totaling more than $9.5 million, of which $3.3 million were paid, leaving an unpaid balance

Case 1:21-cv-01986-PKC-RLM Document 28-1 Filed 06/21/21 Page 6 of 17 PageID #: 573

352 F. Supp. 3d 215, *224; 2018 U.S. Dist. LEXIS 199566, **12

[*224] of approximately $6.2 million. (McKenna Aff. ¶¶ 6-7). Defendants have brought at least 2,300 lawsuits in New York state court and 20 American Arbitration Association ("AAA") proceedings against State Farm to collect no-fault benefits in the aggregate amount of approximately $3.2 million. (ECF No. 58, at 1; McKenna Aff. ¶ 8). The amount at issue in each case typically ranges from a few hundred to a few thousand dollars. (ECF Nos. 7-1; 7-2; 58-1; 58-2). State Farm expects that Defendants will continue to bring state actions and arbitration proceedings during this litigation to collect remaining billed and unpaid benefits. (McKenna Aff. ¶ 12).

State Farm brought this action for damages under the Racketeer Influenced and Corrupt Organizations [**13] ("RICO") statute, 18 U.S.C. §§ 1961, *et seq.*, common law fraud and unjust enrichment, and for a declaratory judgment that it is not obligated to pay additional no-fault benefits for charges submitted to date and through the pendency of the litigation. (Am. Compl. ¶¶ 242-269). Simultaneously with the filing of its amended complaint, State Farm made this motion for a preliminary injunction. (ECF No. 6).

## DISCUSSION

### III. Statutory Authority to Enjoin Pending State Court Proceedings

#### 1. The in-aid-of-jurisdiction exception generally

The source of this Court's authority to enjoin the pending actions is the All-Writs Act, 28 U.S.C. § 1651, which provides, in relevant part, that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act is a codification of the powers traditionally exercisable by courts in equity, *see Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 326 n. 8, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999); *Clinton v. Goldsmith*, 526 U.S. 529, 537, 119 S. Ct. 1538, 143 L. Ed. 2d 720 (1999), and "has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve "the rational ends of law."'" *U.S. v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S. Ct. 364, 54 L. Ed. 2d 376 (1977) (quoting *Harris v. Nelson*, 394 U.S. 286, 299, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969)).

"Pursuant to this inherent power, a federal court may enjoin [**14] actions in other jurisdictions that would undermine its 'ability to reach and resolve the merits of the federal suit before it.'" *Federal Trade Commission v. 4 Star Resolution, LLC*, 2016 U.S. Dist. LEXIS 102640, 2016 WL 4138229, at * 2 (W.D.N.Y. Aug. 4, 2016) (quoting *In re Baldwin-United Corp.*, 770 F.2d 328, 338-339 (2d Cir. 1985)).

The Court's authority to enjoin pending state proceedings is limited by the AIA,[2] which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283. The purpose of the Act, as understood by the courts, is "to forestall the inevitable friction between the state and federal courts [*225] that ensues from the injunction of state judicial proceedings by a federal court." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630, 97 S. Ct. 2881, 53 L. Ed. 2d 1009 (1977) (Rehnquist, J., plurality); *accord Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990). However, "[i]f an injunction falls within one of these three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 134 F.3d 133, 143 (3d Cir. 1998). State Farm contends that injunctions of the sort being requested in this case fall under the second exception to the AIA: injunctions "necessary in aid of [the court's] jurisdiction." 28 U.S.C. § 2283. On a general level, the in-aid-of-jurisdiction exception permits federal [**15] injunctive relief where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970). However, a more concrete definition of the scope of this exception remains elusive.

At a minimum, the law is clear that the mere pendency of a parallel proceeding in state court, in and of itself, is

---

[2] Defendants do not contend that the AIA prohibits the Court from enjoining the commencement of *future* proceedings in state court. *See Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965); *Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003).

Case 1:21-cv-01986-PKC-RLM   Document 28-1   Filed 06/21/21   Page 7 of 17 PageID #: 574

352 F. Supp. 3d 215, *225; 2018 U.S. Dist. LEXIS 199566, **15

insufficient grounds to invoke the exception. This is so even where the state proceeding threatens to preclude the federal court from reaching the same issue through res judicata or collateral estoppel. *See Atlantic Coast Line*, 398 U.S. at 295-296 ("In short, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts. ... Therefore the state court's assumption of jurisdiction over the state law claims ... did not hinder the federal court's jurisdiction so as to make an injunction necessary to aid that jurisdiction"); *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir. 2004) ("[A] federal district court, even assuming it has some interest in avoiding delay in its own proceedings, has no interest—no interest that can be vindicated **[**16]** by the exercise of the federal injunction power—in being the *first* court to hold a trial on the merits") (emphasis in the original); *Baldwin-United Corp.*, 770 F.2d at 336 ("[T]he mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not in itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action").

State Farm does not quarrel with this rule as a general matter but argues that this case presents special considerations: "the very nature of Defendants' [alleged] fraud scheme renders it uniquely unjust to be litigated on a claim-by-claim basis." (ECF No. 58, at 5-6) (emphasis added). To wit, State Farm will be forced to defend over 2,300 separate actions and demonstrate the fraudulent nature of each claim *seriatim*, without a meaningful opportunity demonstrate the *pattern* of fraud common to all. The Court is aware of no relevant Supreme Court or Second Circuit precedent addressing the unique challenges posed by such a colossal number of individual actions, particularly where the plaintiff has alleged that the defendants acted pursuant to a single fraudulent scheme, and where the federal court has asserted **[**17]** jurisdiction over proceedings with the potential to resolve all claims globally.

2. Applicability of the in-aid-of-jurisdiction exception to "*in personam*" proceedings

The Second Circuit has held that, "generally," the in-aid-of-jurisdiction exception **[*226]** allows a federal court to protect its jurisdiction over *in rem* proceedings, while requiring it to allow parallel *in personam* proceedings to continue unabated. *U.S. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013); *accord Wyly v. Weiss*, 697 F.3d 131, 137-138 (2d Cir. 2012). Defendants read these precedents broadly to foreclose a preliminary injunction in this case, because the state no-fault actions are *in personam* rather than *in rem*. However, based on its review of the applicable law, the Court does not find this a compelling basis to deny the requested relief.

The source of the *in rem* exception to the AIA is the Supreme Court's holding in *Kline*, *supra*. Following the plaintiff's commencement of a breach-of-contract action in federal court, the defendants brought a similar action in state court, and the federal plaintiff sought to enjoin the defendants from further prosecuting the state action. *See* 260 U.S. at 227-228. The Court held that the injunction was barred by the statutory predecessor to the AIA. In so holding, the Court drew a comparison between *in rem* and *in personam* **[**18]** actions. Where the action is *in rem*, the Court held, "the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached." *Id.* at 229. By contrast, the Court held that an action brought to enforce a personal liability "does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending" and therefore did not justify a departure from the AIA. *Id.* at 230. It is not clear, however, that *Kline* was intended to establish a general rule prohibiting injunctions of state *in personam* cases. That case involved no special equities that weighed in favor of an injunction; it simply concerned a plaintiff's attempt to circumvent a contract dispute in state court by bringing an identical lawsuit in federal court. The decision did not address the situation where a party sought equitable relief in federal court for the reason that they would be subject to a multiplicity of lawsuits in state court. *See Equitable Life Assur. Soc. of U.S. v. Wert*, 102 F.2d 10, 14-15 (8th Cir. 1939); *Armour & Co. v. Miller*, 91 F.2d 521, 527-529 (8th Cir. 1937) (Thomas, J., dissenting).

It was not until *Toucey*, *supra*, that the Court held definitively that state proceedings could not be enjoined under any circumstances except in *in rem* cases or where specifically **[**19]** authorized by statute. *See* 314 U.S. at 139; *see also Mandeville v. Canterbury*, 318 U.S. 47, 49, 63 S. Ct. 472, 87 L. Ed. 605 (1943). However, *Toucey* was decided before the 1948 revisions to the Judicial Code, which amended the AIA to insert, among other things, the explicit exception for injunctions "in aid of [the court's] jurisdiction." 28 U.S.C. § 2283. These amendments were in large part intended to restore "the basic law as generally understood and interpreted prior to the *Toucey* decision." *Mitchum v. Foster*, 407 U.S. 225, 236, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972). In no case since the 1948 amendments has

Case 1:21-cv-01986-PKC-RLM Document 28-1 Filed 06/21/21 Page 8 of 17 PageID #: 575

352 F. Supp. 3d 215, \*226; 2018 U.S. Dist. LEXIS 199566, \*\*19

the Supreme Court expressly construed the in-aid-of-jurisdiction exception to apply solely, or even generally, to *in rem* actions.[3]

 **[\*227]** "Neither the *Kline* opinion nor the cases following *Kline* explain why the impairment of a federal court's 'jurisdiction' is greater where the concurrent actions are in rem." Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. Chi. L. Rev. 717, 746 (1977). As the Supreme Court has acknowledged in other contexts, the dichotomy between personal and property rights is a false one. "Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a 'personal' right, whether the 'property' **[\*\*20]** in question be a welfare check, a home, or a savings account." *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S. Ct. 1113, 31 L. Ed. 2d 424 (1972). Although the *Toucey* Court justified the *in rem* exception by warning that concurrent proceedings "would give rise to actual physical friction," 314 U.S. at 135, it seems that this concern is more metaphoric than literal. The "friction" in both *in rem* and *in personam* cases is qualitatively the same; it results from the fact that the state court has dispensed of the controversy in a potentially different manner than the federal court would have done.

In any event, the *in rem* doctrine, whatever its justifications, "does not seem an accommodation relevant to the interests of federalism." William T. Mayton, *Ersatz Federalism Under the Anti-Injunction Statute*, 78 Colum. L. Rev. 330, 362 (1978). Why should the AIA's allocation of power between the states and the federal government, a concern unique to our American system of dual sovereignty, depend on whether the jurisdictional prerequisite is *in rem* or *in personam*, a distinction based on "the substantive law of property as it existed under the ancient Roman law"? *Montville Tp. v. Block 69, Lot 10*, 74 N.J. 1, 11, 376 A.2d 909, 914 (N.J. 1977); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 311, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

In recent times, courts have liberalized their interpretation of the in-aid-of-jurisdiction exception. *See* 17A C. Wright **[\*\*21]** & A. Miller, Federal Practice & Procedure § 4225 (3d ed.) ("Commentators have urged that the 'necessary in aid of its jurisdiction' exception be read more broadly, so that it would encompass more than the in rem situation. ... There have been some signs of such flexibility in the recent cases"). A paradigmatic example of this shift has been in the realm of class action practice and consolidated multidistrict litigation (MDL) proceedings. In these cases, courts have held that the in-aid-of-jurisdiction exception may be invoked where parallel state actions might trigger a breakdown in settlement negotiations. *See In re Diet Drugs*, 282 F.3d 220, 233-240 (3d Cir. 2002); *Carlough v. Amchem Products, Inc.*, 10 F.3d 189 (3d Cir. 1993); *Battle*, 877 F.2d 877, 881-882 (11th Cir. 1989), *reh'g denied*, 887 F.2d 1093 (11th Cir. 1989); *Baldwin-United Corp.*, 770 F.2d at 337-338; *Three J Farms, Inc. v. Plaintiffs' Steering Committee (In re Corrugated Container Antitrust Litigation)*, 659 F.2d 1332, 1334-35 (5th Cir. 1981), *cert. denied*, 456 U.S. 936, 102 S. Ct. 1993, 72 L. Ed. 2d 456 (1982). Other courts have held that, where settlement negotiations have begun in competing state class actions, those state actions may be enjoined where they would subvert the purposes of the MDL statute to adjudicate claims in one forum and avoid duplicative rulings. *See In re Ocwen Federal Bank FSB Mortg. Servicing Litigation*, 397 F.Supp.2d 957, 963-964 (N.D. Ill. 2005); *In re American Online Spin-Off Accounts Litigation*, 2005 U.S. Dist. LEXIS 45625, 2005 WL 5747463, at \*5 (C.D. Cal. May 9, 2005); *In re Lease Oil Antitrust Litigation No. II*, 48 F.Supp.2d 699, 704 (S.D. Tex. 1998).

 **[\*228]** Some of the cases that have applied the exception under these circumstances have compared the federal settlement to a "*res*" in order to fit the exception into the limited *Kline* framework. *See, e.g., Diet Drugs*, 282 F.3d at 235 n. 12; *Battle*, 877 F.2d at 882; *Baldwin-United Corp.*, 770 F.2d at 337. However, as the Second Circuit explained with admirable candor in *Baldwin-United* **[\*\*22]**, the "*res*" metaphor expresses the fact that, like an *in rem* action, it would be "intolerable to have conflicting orders from different courts." 770 F.2d at 337 (citations and quotations omitted) ("Any substantial risk of this prospect would ... destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims"). Certainly, the concern in such cases is not "physical friction," as was held to justify the *in rem*/*in personam* distinction in

---

[3] In *Atlantic Coast Line*, the Court declined to reaffirm *Toucey*'s distinction between *in rem* and *in personam* actions, holding more broadly that the exception "impl[ied] that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility to decide that case." 398 U.S. at 295. *But see Vendo Co. v Lektro-Vend Corp.*, 433 U.S. 623, 641-642, 97 S. Ct. 2881, 53 L. Ed. 2d 1009 (1977) (Rehnquist, J., plurality) (citing the *Toucey* rule with approval).

Case 1:21-cv-01986-PKC-RLM   Document 28-1   Filed 06/21/21   Page 9 of 17 PageID #: 576

352 F. Supp. 3d 215, *228; 2018 U.S. Dist. LEXIS 199566, **22

*Toucey*, 314 U.S. at 135. It is difficult to escape the conclusion that the "*res*" label does no more than entomb the court's judgment about the appropriate balance to be struck between the principles of federalism and comity, on the one hand, and the need to dispose of the case in a just and practicable manner, on the other.

More broadly, courts have held that, at least where important constitutional rights are at stake, *in personam* state court proceedings may be enjoined where a litigant's "right, if any, to litigate the issues in a state court appears more theoretical than real," *Caulder v. Durham Housing Authority*, 433 F.2d 998, 1002 (4th Cir. 1970), *cert. denied* 401 U.S. 1003, 91 S. Ct. 1228, 28 L. Ed. 2d 539 (1971); *see also Sinisgallo v. Town of Islip Housing Authority*, 865 F.Supp.2d 307, 317-319 (E.D.N.Y. 2012); *Lattimore v. Northwest Coop. Homes Ass'n*, 1990 U.S. Dist. LEXIS 3285, 1990 WL 10521534, at *4-*5 (D.D.C. Mar. 26, 1990); *McNeill v. New York City Housing Authority*, 719 F.Supp. 233, 254-256 (S.D.N.Y. 1989). The rationale for these decisions is that, if the state actions proceed to judgment without giving the party an "adequate forum" to raise its **[**23]** claims, "the [federal] Court will be unable to accord meaningful relief to the parties." *McNeill*, 719 F.Supp. at 256. However, this reasoning need not be limited to constitutional claims. A similar doctrine applies, for instance, in determining whether to enforce contractual forum-selection clauses. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) (forum selection clauses need not be enforced if the opponent demonstrates "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court"); *accord Martinez v. Bloomberg*, 740 F.3d 211, 228 (2d Cir. 2014). It cannot be presumed that, in enacting the AIA, Congress would intend to bind courts to so offensive a result in the name of federalism and comity. In the words of Judge Cardozo: "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided." *See In re Rouss*, 221 N.Y. 81, 91, 116 N.E. 782 (1917) (Cardozo, J.).

In sum, while it is clear that the court may not enjoin a state *in personam* for the sole purpose of being the first court to reach judgment, *see Atlantic Coast Line*, 398 U.S. at 295-296; *Kline*, *supra*; *Ret. Sys. of Ala.*, 386 F.3d at 429, it must be otherwise of no moment that the proceedings sought to be enjoined are *in personam* rather than *in rem*. The Court can locate no controlling precedent forbidding the **[**24]** issuance of an injunction in a case such as this, and it does not find the theoretical distinctions between *in rem* and *in personam* jurisdiction sufficiently compelling to deny an injunction on that basis alone.

**[*229]** 3. Whether the pending no-fault actions may be enjoined

Returning to the facts in this case, the question that must be asked is whether the pendency of 2,300 individual no-fault actions would render "trial in the [state] forum ... so gravely difficult and inconvenient that [plaintiff] will for all practical purposes be deprived of [its] day in court." *Bremen*, 407 U.S. at 17-18. The Court holds that they do.

The gravamen of State Farm's allegations is that Defendants have systematically and concertedly administered treatments in a rote fashion, independent of the clinical needs of the patient, in such a combination as to maximize reimbursements while minimizing the possibility of detection through the use of various controlled entities. Yet these alleged violations may not be apparent if the claims and their supporting documentation are examined in isolation on a case-by-case basis. Facially legitimate treatments may be provided with little variance across multiple patients, but it is only by analyzing **[**25]** the claims as a whole that the irresistible inference arises that the treatments are not being provided on the basis of medical necessity. *See State Farm Mutual Automobile Insurance Company v. Physicians Injury Care Center, Inc.*, 2010 U.S. Dist. LEXIS 147405, 2010 WL 11475709, at *6-*7, *14 (M.D. Fla. May 24, 2010) (holding that plaintiffs proved fraud based on evidence that 957 patients were subjected to an identical treatment protocol with little deviation). Because it is only through this tapestry of facts that the alleged fraud comes into focus, State Farm may not as a practical matter have a fair opportunity to present its claims unless it is permitted to direct the trier of fact to **all** of the claims at issue. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 68 F.Supp.3d 744 (E.D. Mich. 2014) ("In fact, State Farm suggests, this court is the only appropriate forum for these claims because when litigated individually at the state court level, the relevant pattern of fraudulent behavior cannot be examined").

Any judgment in the state no-fault proceedings will be *res judicata* for purposes of this action. *See Government Employees Ins. Co. v. Five Boro Psychological*

Case 1:21-cv-01986-PKC-RLM   Document 28-1   Filed 06/21/21   Page 10 of 17 PageID #: 577

352 F. Supp. 3d 215, *229; 2018 U.S. Dist. LEXIS 199566, **25

*Services, P.C.*, 939 F. Supp. 2d 208, 217 (E.D.N.Y. 2013); *see also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 429 N.E.2d 1158, 445 N.Y.S.2d 687 (N.Y. 1981) (under New York law, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy"). Therefore, if State Farm suffers an adverse judgment in state court, "this court **[\*\*26]** will be bound to adhere to that decision, even though [the state] court [may] not [have been] able to consider what seems to be the heart of plaintiff's case." *Lattimore*, 1990 U.S. Dist. LEXIS 3285, 1990 WL 10521534, at \*5. Such a result is anything but conducive to the orderly administration of justice.

In theory, State Farm could move to consolidate cases within the same court if they "involv[e] a common question of law or fact." N.Y. Civil Practice Law and Rules 602(a); *see Metroscan Imaging, P.C. v. Geico Ins. Co.*, 13 Misc.3d 35, 823 N.Y.S.2d 818 (N.Y. App. Term. 2d & 11th Jud. Dists. 2006) (affirming an order granting insurer's motion to consolidate 61 no-fault actions for purposes of amending the answer to assert a defense of fraudulent incorporation and scheduling a framed hearing as to that issue). But "[c]onsolidation is highly disfavored by courts in no-fault insurance cases" and usually requires that the claims arise out of the same accident. *Urban Radiology, P.C. v. GEICO Ins. Co.*, 958 N.Y.S.2d 64, 2010 NY Slip Op 51554[U], 28 Misc.3d 1230[A], at \*1 (N.Y. Civ. Ct., Kings County 2010) (citing cases). The Court has been **[\*230]** unable to locate any New York case in which hundreds of claims by different providers and relating to different accidents have been consolidated. The inability of State Farm to consolidate these proceedings into a manageable number of cases would likely render its "right, if any, to litigate the issues in a state court ... more theoretical than real." *Caulder*, 433 F.2d at 1002.

Failure to enjoin **[\*\*27]** the state actions would "destroy the utility of the [declaratory judgment procedure] otherwise ideally suited to resolving such broad claims." *Baldwin-United Corp.*, 770 F.2d at 337. The very purpose of a declaratory judgment, like an MDL proceeding, is to avoid a multiplicity of lawsuits and piecemeal litigation. *See Airship Industries (UK) Ltd. v. Goodyear Tire & Rubber Co.*, 643 F. Supp. 754, 761 (S.D.N.Y. 1986); *Assicurazioni Generali, SpA v. Terranova*, 1984 U.S. Dist. LEXIS 22477, 1984 WL 1191, at \*5 (S.D.N.Y. Oct. 25, 1984); *Savini v. Sheriff of Nassau County*, 209 F. Supp. 946, 950 (E.D.N.Y. 1962). It is for precisely this reason that courts in this district have stressed that it is appropriate to exercise jurisdiction over declaratory judgment actions by no-fault insurers. *See Jacques*, 2017 U.S. Dist. LEXIS 20915, 2017 WL 9487191, at \*10 ("the federal court's exercise of jurisdiction [over no-fault insurer's declaratory judgment claim] is necessary to avoid piecemeal litigation, as otherwise Plaintiffs would be required to adjudicate [defendant's] lawsuit involving the same fraudulent billing scheme in state court"), *Government Employees Ins. Co. v. Li-Elle Service, Inc.*, 2014 U.S. Dist. LEXIS 38855, 2014 WL 1154244, at \*5 (E.D.N.Y. Mar. 21, 2014) (where provider had 97 lawsuits in state court, "it would be highly inefficient and duplicative for plaintiffs to continue to litigate defendants' entitlement to payment in so many cases"); *Five Boro Psychological Services, P.C.*, 939 F. Supp. 2d at 216 n. 8 ("... GEICO alleges a systematic, institutionalized fraudulent scheme designed to produce thousands of individual fraudulent no-fault claims. I reject the suggestion that such a defense is better raised and resolved (potentially in conflicting ways) in **[\*\*28]** every one of literally hundreds of small-dollar cases pending in numerous different state courts, rather than in a single case like this one").

Although not cited by State Farm, *American Ins. Co. v. Lester*, 214 F.2d 578 (4th Cir. 1954) is on point. There, an insurer brought a declaratory judgment action after defendants instituted ten separate actions in West Virginia state court. *See id.* at 580. The insurer prayed for an order enjoining further prosecution of these proceedings, arguing that "it would be inequitable, unreasonable, and extremely costly in time and money to try the same issues ten times (and perhaps thirty-four times) and with varying results . . . ." *Id.* at 580. Although the precise issue presented in that case was whether the district court had subject matter jurisdiction, the Fourth Circuit offered the following comment:

> ... [W]e think it advisable to express the view that [the District Court] has the power, to be exercised in its discretion, to enjoin the Lesters from proceeding further in the civil actions they have filed in the West Virginia State Court. Without such a power, the granting of a declaratory judgment may well, in many cases as in the instant case, fall short of attaining the objectives which are sought in proceedings looking **[\*\*29]** to a declaratory judgment. The power of the court to grant injunctive relief in such cases is not forbidden by 28 U.S.C. § 2283, since the exercise of the injunctive power is not only 'in aid' of the court's jurisdiction but is essential to its effective exercise.

Case 1:21-cv-01986-PKC-RLM Document 28-1 Filed 06/21/21 Page 11 of 17 PageID #: 578

352 F. Supp. 3d 215, *230; 2018 U.S. Dist. LEXIS 199566, **29

*Id.* at 582 (citations omitted).

Earlier cases, some of which are referenced in the *Lester* decision, may be cited **[*231]** for the proposition that where a federal court obtains jurisdiction over an action by an insurer to determine the rights of the parties with respect to insurance policies, it may enjoin parallel state proceedings, notwithstanding the AIA, if those proceedings are so multitudinous that the state court would "be unable to do complete justice" or provide the insurer an adequate remedy at law. *See Equitable Life Assur. Soc. of U.S.*, 102 F.2d at 14-15; *Jamerson v. Alliance Ins. Co. of Philadelphia*, 87 F.2d 253 (7th Cir. 1937), *cert. denied*, 300 U.S. 683, 57 S. Ct. 753, 81 L. Ed. 886 (1937); *Pacific Mut. Life Ins. Co. of California v. Parker*, 71 F.2d 872, 875-876 (4th Cir. 1934). With the notable exception of *Lester*, it appears that these cases fell out of favor after the Supreme Court's decision in *Toucey*, *supra*.[4] The abandonment of this line of cases was lamented by Professor Borchard, who remarked that:

> ... the metaphysical protection of state sovereignty [should] yield to an efficient administration of justice in a country that after all is one. ... The advantages of an early determination of the fundamental question **[**30]** of coverage and company liability may in many cases be deemed to outweigh the alleged necessities for an immediate trial ... , which in any event would not be long delayed and which might never be prosecuted were the legal immunity of the company promptly established.

Edwin Borchard, *Declaratory Judgments* 665 (2d ed. 1941). As explored above, however, it is now open to significant doubt whether *Toucey* may continue to be relied on for the proposition that parallel *in personam* proceedings may not be enjoined in aid of a court's jurisdiction. The Second Circuit has already departed from this framework in at least one respect. *See Baldwin-United, supra*. Wooden reliance on the already strained *Toucey* doctrine should not preclude a court from taking a fresh look at the declaratory judgment cases cited above.

Although the district court cast doubt on *Lester* in *Maryland Cas. Co. v. W.R. Grace & Co.*, 726 F.Supp. 62 (S.D.N.Y. 1989), *aff'd* 889 F.2d 1231 (2d Cir. 1989), that case is readily distinguishable, as the only pending state court action sought to be enjoined was a single coverage dispute. Further, while the district court's order denied the insurer's request to enjoin future state court proceedings to avoid a multitude of duplicative actions, the **[**31]** order was only affirmed by the Second Circuit under an abuse-of-discretion standard. *See W.R. Grace & Co.*, 889 F.2d at 1231.

Finally, enjoining the state actions in this case is consistent with the purpose of the AIA, which is rooted in respect for the sovereignty of state governments over matters within their jurisdiction. Far from creating "friction between the state and federal courts," *Vendo* 433 U.S. at 630 (Rehnquist, J., plurality), an injunction in this case will serve the public policy of New York in combatting insurance fraud in the no-fault sector. *See Serio*, 100 N.Y.2d at 861-862; *Pommells v. Perez*, 4 N.Y.3d 566, 571, 830 N.E.2d 278, 797 N.Y.S.2d 380 (N.Y. 2005); **[*232]** *Viviane Etienne*, 25 N.Y.3d at 513 (Stein, J., dissenting); *Ramkumar v. Grand Style Transp. Enterprises Inc.*, 22 N.Y.3d 905, 907, 998 N.E.2d 801, 976 N.Y.S.2d 1 (N.Y. 2013) (Smith, J., dissenting). No-fault fraud accounted for more than half of all fraud reports received by the State Department of Financial Services in 2017 and "is a costly and pervasive drain on the national [and statewide] healthcare system." New York State Department of Financial Services, *Investigating and Combating Health Insurance Fraud* 3, 5 (March 15, 2018), *available at* https://www.dfs.ny.gov/reportpub/fraud/health_frd_rpt_2017.pdf (accessed November 21, 2018). "While the policy underlying the Anti-Injunction Act is avoidance of 'disharmony between federal and state systems, the exception in 2283 reflects congressional recognition that injunctions may sometimes be necessary **[**32]** in order to avoid that disharmony.'" *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 134 F.R.D. at 36 (quoting *Amalgamated Sugar Co. v. NL Industries*, 825 F.2d 634, 639 (2d Cir. 1987), *cert. denied*, 484 U.S. 992, 108 S. Ct. 511, 98 L. Ed. 2d 511 (1987)). This is just such a case. New York courts routinely stay collection actions pending declaratory judgment proceedings such as this one. *See Ameriprise Ins. Co. v. Hampton*, 2018 NY Slip Op 51207[U], 60 Misc.3d 1222[A] (N.Y. Sup. Ct., New York County Aug. 14,

---

[4] Less than a year before *Toucey*, the Supreme Court held in *Maryland Cas. Co. v. Pacific Coal & Oil Co.* that a court presiding over an insurer declaratory judgment action had no authority to enjoin a state court action against the insured. 312 U.S. 270, 274, 61 S. Ct. 510, 85 L. Ed. 826 (1941). While *Maryland Cas. Co.* stands for the proposition that the mere existence of a federal declaratory judgment action does not justify an exception to the AIA, it did not involve a multiplicity of lawsuits against the insurer and therefore did not implicate the adequacy of the state forum to handle the claims before it. *See Jamerson*, 87 F.2d at 256.

Case 1:21-cv-01986-PKC-RLM   Document 28-1   Filed 06/21/21   Page 12 of 17 PageID #: 579

352 F. Supp. 3d 215, *232; 2018 U.S. Dist. LEXIS 199566, **32

2018); *21st Century Advantage Ins. Co. v. Cabral*, 954 N.Y.S.2d 762, 35 Misc.3d 1240[A], 2012 NY Slip Op 51086[U] (N.Y. Sup. Ct., Nassau County 2012); *Autoone Ins. Co. v. Manhattan Heights Medical, P.C.*, 899 N.Y.S.2d 57, 24 Misc.3d 1229[A], 2009 NY Slip Op 51663[U] (N.Y. Sup. Ct., Queens County 2009); *St. Paul Travelers Ins. Co. v. Nandi*, 841 N.Y.S.2d 823, 15 Misc.3d 1145[A], 2007 NY Slip Op 51154[U] (N.Y. Sup. Ct., Queens County 2007). Failure to issue an injunction in this case may frustrate the balance that New York has attempted to strike between efficient claims processing and rooting out fraud. Surely this does not advance the goals of federalism.

To be clear, the Court is not invoking the exception to § 2283 solely on the grounds that its judgment may be precluded by an inconsistent judgment in state court. In a typical case with parallel state proceedings, the effect of issue or claim preclusion, "far from requiring the federal court to stay proceedings in the state court, is a result which should [usually] be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal." *Ret. Sys. of Ala.*, 386 F.3d at 429 (quoting *Vernitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir. 1971)). However, these considerations are profoundly inapplicable where, as here, the fragmentation of the dispute into more than 2,300 individual actions would nullify State Farm's efforts to prove fraud at a systemic level, impair a federal **[**33]** declaratory judgment action over which the Court has taken jurisdiction precisely to eliminate such fragmentation, and deprive State Farm of an avenue toward complete relief in *any* court. None of the relevant Supreme Court or Second Circuit precedents disapproving of the in-aid-of-jurisdiction exception in *in personam* cases addressed a conundrum analogous to this one. The paucity of cases addressing circumstances such as these speaks to the narrowness of the exception that the court is creating.

Therefore, the Court finds that it has statutory authority to enjoin the pending state court actions.

## IV. Authority to Enjoin Arbitration Proceedings

Although Defendants oppose State Farm's request to enjoin pending and future arbitration proceedings, they do not advance any substantial legal basis for this branch of the motion to be denied. To the **[*233]** extent that Defendants may be heard to challenge this Court's authority to enjoin the pending or future arbitration proceedings under the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, the Court rejects this argument for the reasons it stated in *Government Employees Insurance Company v. Mayzenberg*, 2018 WL 6031156, at *3-*4 (E.D.N.Y. Nov. 12, 2018).

## V. Whether Preliminary Injunction Pursuant to Fed. R. Civ. P. 65 Is Warranted

The Court now turns to whether the injunction is warranted **[**34]** under traditional principles of equity. To obtain a preliminary injunction pursuant to Fed.R.Civ.P. 65, the moving party must demonstrate ""(1) irreparable harm absent the injunctive relief and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). For the reasons set forth below, the Court concludes that the test is satisfied in this case.

1. <u>Irreparable harm</u>

A showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *New York Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)).

Courts have readily held that irreparable harm occurs where, as here, an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action. *See Government Employees Insurance Company v. Strutsovskiy*, 2017 U.S. Dist. LEXIS 178514, 2017 WL 4837584, at *6 (W.D.N.Y. Oct. 26, 2017); *Allstate Ins. Co. v. Elzanaty*, 929 F.Supp.2d 199, 222 (E.D.N.Y. 2013). On the reasoning **[**35]** of these cases, the Court agrees that State Farm has demonstrated irreparable harm.

Defendants cite *Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995), for the proposition that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not

Case 1:21-cv-01986-PKC-RLM   Document 28-1   Filed 06/21/21   Page 13 of 17 PageID #: 580

352 F. Supp. 3d 215, *233; 2018 U.S. Dist. LEXIS 199566, **35

enough" to establish irreparable harm. *Id.* at 39. However, *Jayaraj* was not about whether wasteful litigation expenses qualified as irreparable harm. The plaintiff in that case, a terminated employee, brought an action for damages and injunctive relief, and sought a preliminary injunction reinstating his position. *See Jayaraj*, 66 F.3d at 38. The Second Circuit held that the injunction would be unwarranted because, should the plaintiff prevail on the merits, monetary damages would be adequate to compensate him for the temporary absence from his job. *See id.* at 39-40. *Jayaraj* simply stands for the proposition that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974). *Jayaraj*'s reasoning does not apply here; even if State Farm prevails on the merits in this case, it will go uncompensated for the time and expense wasted in the state proceedings and arbitrations. *See* **[*234]** *Kansas v. Nebraska*, 135 S.Ct. 1042, 1071, 191 L. Ed. 2d 1 (2015) ("[U]nder the 'American Rule,' we generally do not award **[**36]** attorney's fees 'to a prevailing party absent explicit statutory authority'") (quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)).

Therefore, the Court finds that State Farm has established that it would suffer irreparable injury if a preliminary injunction does not issue.

2. Serious question going to the merits

For a preliminary injunction to issue, there must be either "a likelihood of success on the merits," or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in the movant's favor. *Jackson Dairy*, 596 F.2d at 72. "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Elzanaty*, 929 F.Supp.2d at 217; *see Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953).

The Court need not run through the individual elements of each of State Farm's causes of action, as the parties have wisely focused their arguments on the core factual dispute: whether the services rendered at 1786 Flatbush were, in fact, medically necessary. State Farm has submitted detailed grids purporting to show the initial evaluations made of patients at 1786 Flatbush, the services **[**37]** and supplies rendered, and how those services and supplies were billed. (ECF Nos. 5-1 to 5-8). State Farm has also provided copies of documents allegedly containing false statements by some of the Defendants. For instance, State Farm provides documentation submitted by Defendant Ksenia Pavlova, representing her as an M.D., which State Farm alleges is false. (Am. Compl. ¶ 20; ECF No. 5-9). State Farm also presents a sworn affidavit from Maiga Borisevica ("Borisevica") on behalf of Defendant Maiga Products Corporation, which had failed to appear for a scheduled EUO. (ECF No. 5-26). Borisevica claims that unsuccessful attempts were made to respond to the request, but State Farm avers that they have no record of any such communications. (Am. Compl. ¶ 233; ECF No. 5-26 ¶ 6).

The Court finds that State Farm has "adequately detailed a complicated scheme of alleged fraud activity," *Elzanaty*, 929 F.Supp.2d at 222, and, in light of the exhibits on record, it cannot be said that their request for injunctive relief "rest[s] on mere hypotheticals," *Hancock v. Essential Resources, Inc.*, 792 F.Supp. 924, 928 (S.D.N.Y. 1992). Accordingly, the Court finds that there is a serious question going to the merits.

3. Balance of hardships tipping decidedly in the plaintiffs' favor

Because the Court finds that **[**38]** there are "serious questions going to the merits" in lieu of a "likelihood of success on the merits," it must further inquire as to whether that there is a "balance of hardships tipping decidedly" in State Farm's favor. *Jackson Dairy*, 596 F.2d at 72. The Court need not pause on this question for long, as the irreparable harm factors discussed above also tip the equities squarely in State Farm's favor. If the preliminary injunction is granted and State Farm fails to prove its claims, then, at worst, Defendants' recovery of the no-fault benefits to which they are entitled will be delayed; all Defendants can hope for in **[*235]** pursuing their parallel state lawsuits and arbitrations is to accelerate their receipt of benefits to which they are already entitled.

**CONCLUSION**

For the reasons set forth above, State Farm's motion is **GRANTED** in its entirety. Because the Court is temporarily staying Defendants' right to further commence and prosecute any no-fault arbitrations and state court actions, all discovery, potential dispositive motions, and a potential trial should proceed on an

Case 1:21-cv-01986-PKC-RLM Document 28-1 Filed 06/21/21 Page 14 of 17 PageID #: 581

352 F. Supp. 3d 215, *235; 2018 U.S. Dist. LEXIS 199566, **38

expedited basis.

SO ORDERED.

Dated: Brooklyn, New York

November 26, 2018

/s/ I. Leo Glasser

I. Leo Glasser U.S.D.J.

**End of Document**

# Gov't Emples. Ins. Co. v. Zilberman

United States District Court for the Eastern District of New York

March 25, 2021, Decided; March 25, 2021, Filed

Case No. 1:20-cv-00209-FB-RML

**Reporter**

2021 U.S. Dist. LEXIS 56721 *; 2021 WL 1146086

GOVERNMENT EMPLOYEES INSURANCE COMPANY ET AL., Plaintiff, -against- YAKOV ZILBERMAN, D.C., YAN Z CHIROPRACTIC, P.C., MAZ CHIROPRACTIC, P.C., SANFORD CHIROPRACTIC, P.C., DOS MANOS CHIROPRACTIC, P.C., JOHN DOES 1-10, Defendants.

**Counsel:** [*1] For the Plaintiff: BARRY I. LEVY, SEAN P. GORTON, MICHAEL A. SIRIGNANO, Rivkin Radler LLP, Uniondale, NY.

For the Defendant: MATTHEW J. CONROY, MARIA CAMPESE, Schwartz, Conroy & Hack, PC, Garden City, NY.

**Judges:** FREDERIC BLOCK, Senior United States District Judge.

**Opinion by:** FREDERIC BLOCK

## Opinion

### MEMORANDUM AND ORDER

**BLOCK, Senior District Judge**:

Plaintiffs (collectively "GEICO") bring this action against Yakov Zilberman, Yan Z Chiropractic, Maz Chiropractic, Sanford Chiropractic, Dos Manos Chiropractic, and John Does 1-10 alleging civil RICO violations, common law fraud, unjust enrichment, and aiding and abetting fraud. They also seek a declaratory judgment that defendants have no right to receive payment for "pending bills submitted to GEICO under the names of the PC defendants." ECF No. 1 at 47-48.

GEICO now moves for a preliminary injunction to stay (1) "all No-Fault insurance collection arbitrations between the PC Defendants and GEICO pending before the American Arbitration Association ("AAA") and all state court and civil court collection lawsuits between the PC Defendants and GEICO, until resolution of the instant federal court action" and (2) "enjoining the Defendants from commencing any new No-Fault insurance [*2] collection arbitrations or civil court collection lawsuits against GEICO on behalf of the PC Defendants, until resolution of the instant federal court action." ECF No. 24-11 at 5.

For the following reasons, GEICO's motion is granted.

### I. Motion for Preliminary Injunction

In order to justify a preliminary injunction, the movant must establish "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183-84 (2d Cir. 2019) (internal citations and quotations omitted). "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.1999)).

### A. Irreparable Harm

"Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015).

"Irreparable harm occurs where 'an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action.'" *Gov't Emps. Ins. Co. v. Moshe*, No. 120CV1098FBRER, 2020 U.S. Dist. LEXIS 114100, 2020 WL 3503176, at *1 (E.D.N.Y. June 29, 2020) [*3] (quoting *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233

(E.D.N.Y. 2018)); see also *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 222 (E.D.N.Y. 2013) ("there is a concern here with wasting time and resources in an arbitration with awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective").

There are at least 650 related civil lawsuits and 120 pending arbitrations that present a risk of inconsistent judgments. ECF No. 24-11 at 14. This establishes irreparable harm under well-established authority. *See, e.g., Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449 (E.D.N.Y. 2020), *appeal dismissed* (May 11, 2020).

**B. Serious Question Going to the Merits**

GEICO must demonstrate, at this stage, "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in GEICO's favor. *Parisien*, 352 F. Supp. 3d at 234.

The complaint provides an extremely detailed overview of a complicated scheme in which the defendants are alleged to have (1) provided fraudulent healthcare services that were not medically necessary, (2) used billing codes that exaggerated the level and type of medical services provided in order to increase the charges submitted to plaintiffs, (3) provided the fraudulent medical services pursuant to the wishes of laypersons who were not licensed **[*4]** to provide healthcare services, and (4) relied upon illegal kickback arrangements in the advancement of the allegedly fraudulent scheme. *See generally* ECF No. 1.

Numerous courts have found a "serious question going to the merits" under similar circumstances. *See Elzanaty*, 929 F. Supp. 2d at 222 (finding details regarding "a complicated scheme of alleged fraudulent activity" sufficient); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 453 ("GEICO easily meets the threshold of showing a serious question going to the merits"); *Gov't Emps. Ins. Co. v. Cean*, No. 19CV2363PKCSMG, 2019 U.S. Dist. LEXIS 203298, 2019 WL 6253804, at *5 (E.D.N.Y. Nov. 22, 2019) ("GEICO has alleged, in significant detail, facts relating to Defendants' fraudulent activity in its Complaint, describing fraudulent medical treatment, deceitful billing protocols, and an illegal kickback and referral scheme").

Accordingly, GEICO has satisfied this prong of the test.

**C. Balance of Hardships**

As the Court finds that there are "serious question[s] going to the merits," it must further inquire as to whether that there is a "balance of hardships tipping decidedly" in plaintiff's favor. *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 33 (2d Cir. 2010); *see also Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). The irreparable harms discussed previously also tip the equities in plaintiff's direction. As Judge Chen explained in *Cean*,

> granting the stay and injunction will actually save all parties time **[*5]** and resources. Rather than adjudicating hundreds of individual claims in a piecemeal fashion, all claims can be efficiently and effectively dealt with in a single declaratory judgment action.

2019 U.S. Dist. LEXIS 203298, 2019 WL 6253804, at *5; *see also Elzanaty*, 929 F. Supp. 2d at 222 (finding that "all parties will benefit from having the issue of fraudulent incorporation determined in one action").

The balance of hardships clearly favors GEICO.

**D. Bond**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper." "A district court has a wide discretion to dispense with the bond requirement 'where there has been no proof of likelihood of harm.'" *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 U.S. Dist. LEXIS 195890, 2018 WL 6031156, at *10 (E.D.N.Y. Nov. 16, 2018) (quoting *Donohue v. Mangano*, 886 F. Supp. 2d 126, 163 (E.D.N.Y. 2012)).

GEICO seeks to "waive the security requirement" because the "requested stay and injunction will not cause defendants any prejudice at all." ECF No. 24-11 at 25. As this Court has previously noted, "GEICO undoubtedly has the ability to pay if defendants prevail." *Moshe*, 2020 U.S. Dist. LEXIS 114100, 2020 WL 3503176, at *4. Moreover, there is ample support for GEICO's request. *See Wellmart RX, Inc.*, 435 F. Supp. 3d at 456 (waiving the security requirement in light of the "systemic nature of fraud alleged in the complaint and the lack of prejudice to defendants resulting from a

preliminary injunction"); **[*6]** *Mayzenberg*, 2018 U.S. Dist. LEXIS 195890, 2018 WL 6031156, at *10 (E.D.N.Y. Nov. 16, 2018) (not requiring security based on same considerations); *Elzanaty*, 929 F. Supp. 2d at 222 (same).

Accordingly, the Court waives the security requirement of Rule 65(c).

## CONCLUSION

GEICO's motion for a preliminary injunction is GRANTED, and a preliminary injunction is issued (1) staying all of defendants' pending arbitrations and civil collection lawsuits against GEICO and (2) enjoining defendants from commencing new no-fault arbitrations and litigations against GEICO until resolution of the instant federal court action.

**SO ORDERED**.

/s/ Frederic Block

FREDERIC BLOCK

Senior United States District Judge

Brooklyn, New York

March 25, 2021

---

**End of Document**